

FILED

MAR 1 2 2019

Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ELIZABETH LOUISE FELT, <br><br> Defendant. | CR 14–48–M–DLC <br><br><br> ORDER |

Before the Court is Defendant Elizabeth Louise Felt's Motion to Dismiss Indictment. (Doc. 15.) Felt argues that the indictment, which charges offense conduct ending in 2012, should be dismissed because: (1) assuming the indictment was properly sealed, it was sealed for an unreasonable length of time; and (2) prosecution would violate Felt's constitutional right to a speedy trial.

## BACKGROUND

Felt is charged with a single count of theft of government property in violation of 18 U.S.C. § 641. (Doc. 1.) Felt allegedly collected Social Security benefits for a deceased person from February 2004 through September 2012.

The Social Security Administration ("SSA") began investigating Felt in 2012 in response to a public referral alleging that Felt had been collecting SSA benefits intended for a beneficiary who died in 2004 while in Mexico with Felt.

-1-

Special Agent Jacques Hansen handled the investigation. (Doc. 17-5 at 1.) By working with Customs and Border Protection, Hansen was able to learn of Felt's recent movements across the Mexico-United States border. (Doc. 17-5 at 2.) He determined that Felt was likely living in Mexico. (Doc. 17-5 at 2.)

In early 2013, Hansen interviewed Felt's mother, who informed him that she had concealed Felt's presence during a prior interview. (Doc. 17-5 at 2.) Felt's mother stated that Felt left Missoula, Montana the day after that earlier interview and that Felt was likely somewhere in Latin America. (Doc. 17-5 at 2.) Hansen also spoke with Felt's attorney, who requested information about the investigation. (Doc. 17-5 at 2–3.) The attorney, Marc Geller, said that he would contact Hansen after talking to his client, but when Hansen and Geller spoke again, over a month later, Geller had not been in contact with Felt, whose last location was Tijuana, Mexico. (Doc. 17-5 at 3.) Although Hansen reviewed Felt's financial records and continued to interview witnesses through 2014, he was not able to locate her. (Doc. 17-5 at 3.)

A grand jury indicted Felt in December 2014. The indictment was sealed upon issuance, and it was not unsealed until Felt's initial appearance before this Court following her arrest in Mexico in late 2018. Between the indictment and the arrest, several agencies attempted to find and apprehend Felt.

Felt's arrest warrant was entered into the National Crime Information Center system in January 2015. (Doc. 17-4 at 1.) Felt proved difficult to locate, and the United States Marshal Service ("USMS") became involved in October 2015. (Doc. 17-5 at 3.) Deputy United States Marshal Chris Strommen worked on the case. (Doc. 17-4.) Strommen signed an affidavit averring that: (1) authorities attempted, but were unable, to arrest Felt in Mexico in March 2016, as the Mexican authorities needed more information to locate Felt; (2) Customs and Border Patrol monitored flight activity in an attempt to find Felt; (3) Strommen spoke with Attorney Geller, who gave Strommen a phone number that Geller believed to be Felt's but which in fact belonged to Felt's acquaintance; (4) Geller had no contact with Felt after 2013, and he believed that he never met her in person; (5) Felt's sister and mother, as well as the caretaker for Felt's brother, informed Strommen that they did not know where to find Felt; and (6) the USMS took measures to ensure that it would be notified if Felt attempted to cross the border between Mexico and the United States. (Doc. 17-4.)

In October 2018, the USMS received new information regarding Felt's whereabouts in Mexico. (Doc. 17-4 at 3.) The USMS worked with Mexican authorities, which successfully arrested Felt in December 2018. (Doc. 17-4 at 3.) Felt appeared before the Southern District of California after she was turned over to U.S. authorities at the San Ysidro Point of Entry. (Doc. 17-4 at 3.)

## DISCUSSION

Non-capital offenses, including theft of government property, carry a five-year statute of limitations. 18 U.S.C. § 3282. The statute of limitations is tolled when a grand jury returns an indictment. Fed. R. Crim. P. 6(f); *United States v. Bracy*, 67 F.3d 1421, 1426 (9th Cir. 1995). Here, the indictment was returned within less than five years of the offense conduct and well within the statute of limitations. Felt nonetheless argues: (1) that the indictment was improperly sealed and that the statute of limitations has therefore run; and (2) that continued prosecution would violate Felt's constitutional right to a speedy trial.

### I. Improper Sealing

Felt argues that the indictment was improperly sealed and that the five-year statute of limitations has accordingly run. The Court disagrees.

Where an indictment is sealed to serve "legitimate prosecutorial objectives," the return of the sealed indictment tolls the statute of limitations. *Bracy*, 67 F.3d at 1427. Here, because Felt was not arrested until 2018, the sealing of the indictment was consistent with the relevant procedural rules. Local Criminal Rule 6 provides that "[i]ndictments are sealed until all named defendants have appeared or are in custody." Similarly, Federal Rule of Criminal Procedure 6(e)(4) authorizes "[t]he magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial."

By providing for the sealing of an indictment pending apprehension of a defendant, the Local and Federal Rules reflect that the government has a "legitimate prosecutorial objective" to prevent defendants from evading criminal proceedings. *See Bracy*, 67 F.3d at 1427. Here, Felt successfully evaded capture for many years. She either refused to share her whereabouts with family members and friends or worked with others to keep her location secret from the government agencies looking for her. She even physically hid from Agent Hansen during the early stages of the investigation. (Doc. 17-5 at 2.) The government appropriately moved to seal the indictment to improve its ability to apprehend Felt. The sealed indictment tolled the statute of limitations, and this proceeding is not untimely. *See* U.S.C. § 3290 ("No statute of limitations shall extend to any person fleeing from justice.").

## II. Speedy Trial

Felt also argues that continued prosecution would violate her Sixth Amendment right to a speedy trial. The Court finds that Felt is personally responsible for the delay in prosecution, and it denies her motion to dismiss the indictment.

In determining whether a criminal defendant's speedy trial right has been infringed the Court must consider: (1) "whether delay before trial was uncommonly long"; (2) "whether the government or the criminal defendant is more

-5-

to blame for that delay"; (3) "whether, in due course, the defendant asserted his right to a speedy trial"; and (4) "whether [the defendant] suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651 (1992). Where the delay is attributable to the government, the defendant generally need not demonstrate satisfaction of the fourth factor. *Id.* at 656–58. On the other hand, "if the Government . . . pursued [the defendant] with reasonable diligence from his indictment to his arrest, [the defendant's] speedy trial claim would fail . . . as a matter of course however great the delay, so long as [the defendant] could not show specific prejudice to his defense." *Id.* at 656.

The government concedes that the first factor is satisfied. Indeed, it is clear that the "delay stretch[ed] beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at 652. In *United States v. Beamon*, the Ninth Circuit found that delays of 17 and 20 months were "uncommonly long" and "more than sufficient to trigger" further analysis of the speedy trial factors. 992 F.2d 1009, 1013 (9th Cir. 1993). Here, Felt is accused of conduct ending over six years ago, and she was arrested approximately four years after indictment. The delay is significant, and the first factor is satisfied.

However, because Felt is responsible for the delay, the remaining factors weigh in the government's favor. Analysis of the second factor—who caused the delay—depends upon how diligently the government pursued the defendant.

*Doggett*, 505 U.S. at 652. The Court finds that the government consistently and diligently took measures to locate and arrest Felt for years prior to her arrest. Even though Felt was known to be located in Mexico and an alert would issue if she were to cross the border, the SSA and USMS continued to investigate witnesses and financial records in order to effect an arrest in Mexico. Ultimately those efforts were fruitful, and the Mexican authorities were able to find Felt and transfer her to the United States. The government acted diligently throughout its investigation, and the delay in prosecution is singularly attributable to Felt, who actively concealed her location to avoid earlier apprehension. *See Dickey v. Florida*, 398 U.S. 30, 48 (1970).

The third factor—whether the defendant timely asserted her speedy trial right—similarly weighs in the government's favor. Where a defendant knows of pending charges and evades prosecution, the third factor "weigh[s] heavily" against her. *Doggett*, 505 U.S. at 653. The government has shown that: (1) Felt hid from Special Agent Hansen during an interview of Felt's mother; (2) Felt left Montana for Mexico immediately after that interview; (3) Felt learned further details regarding the SSA investigation from Attorney Geller and then abruptly discontinued her relationship with Geller; (4) Felt either concealed location information from her family members or convinced them to provide evasive answers; and (5) Felt remained in Mexico for years despite her likely knowledge of

this matter. Based on these facts, which Felt does not dispute, the Court finds that Felt did not timely assert her right to a speedy trial but rather attempts to use it as another evasive tactic.

Finally, because Felt bears responsibility for the delay, the fourth factor supports the government's position. "[T]hough time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more severely." *Id.* at 655 (internal citation omitted). "[P]retrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down." *Id.* at 656. Thus, the second factor in the speedy trial analysis bears a direct correlation to the fourth; a party's culpability for delaying proceedings is inversely proportionate to its ability to allege prejudice. *Id.* at 656–58. Here, Felt has not attempted to show any "specific prejudice to [her] defense," and she is accordingly unable to satisfy the fourth factor. *Id.* at 656.

IT IS ORDERED that the motion (Doc. 15) is DENIED.

DATED this 12th day of March, 2019.

Dana L. Christensen, Chief Judge
United States District Court